UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMIAH FOLSOM HERBERT,<br>*Plaintiff*,<br>v.<br>CHRISTINA SANFELIZ, DEVINNIE M. DEPUY, CHRISTOPHER FOX, *and* ANDREW KINDERMAN,<br>*Defendants*. | No. 22-CV-4299 (KMK)<br>OPINION & ORDER |

Appearances:

Jeremiah F. Herbert
Gouverneur, NY
*Pro se Plaintiff*

Michael H. Sussman, Esq.
Sussman & Watkins
Goshen, NY
*Counsel for Defendant Christina SanFeliz*

S. Cynthia Luo, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants Devinnie M. Depuy and Christopher Fox*

Gabriel Cahn, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants Devinnie M. Depuy, Christopher Fox, and Andrew Kinderman*

KENNETH M. KARAS, United States District Judge:

Jeremiah Folsom Herbert ("Plaintiff"), proceeding pro se, brings this Action against Christina SanFeliz ("SanFeliz"), Devinnie M. Depuy ("Depuy"), Christopher Fox ("Fox"), and Andrew Kinderman ("Kinderman") (collectively "Defendants"), alleging claims of excessive

force, unlawful search, unconstitutional conditions of confinement, and deliberate indifference to medical needs. (*See* Second Am. Compl. ("SAC") 2 (Dkt. No. 57).)[1] Before the Court are the Parties' cross-Motions for Summary Judgment. (*See* Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") (Dkt. No. 162); Not. of Mot. by Def. SanFeliz for Summ. J. (Dkt. No. 182); Not. of Mot. (Dkt. No. 187).)[2] For the reasons set forth below, Defendants' summary judgment motions are granted and Plaintiff's motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from the Parties' statements and counter-statements pursuant to Local Civil Rule 56.1. (*See* Pl.'s Statement of Disputed Factual Issues ("Pl.'s 56.1") (Dkt. No. 173); Def. SanFeliz's Statement of Undisputed Material Facts ("SanFeliz's 56.1") (Dkt. No. 184); Def. SanFeliz's Response to Pl.'s Statement of Disputed Facts ("SanFeliz's Counter 56.1") (Dkt. No. 185); OAG Defs.' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("OAG Defs.' 56.1") (Dkt. No. 190); Not. of Mot. Opp'n Reply Under Rule 56.1 ("Pl.'s Counter 56.1") (Dkt. No. 200); Not. of Mot. Opp'n Reply Under Rule 56.1 ("Pl.'s Second Counter 56.1") (Dkt. No. 201).)[3]

---

[1] For filings with page numbers, the Court refers to those page numbers. For filings without page numbers, the Court refers to the ECF pagination found in the upper-right hand corner of each page. For filings without page numbers or ECF pagination, the Court refers to the PDF page number of the filing.

[2] Plaintiff filed a second Motion for Summary Judgment on December 31, 2025, (*see* Pl.'s Mot. for Summ. J. (Dkt. No. 161)), that seems to be a copy of his December 29, 2025 Motion. Accordingly, the Court will only make reference to Plaintiff's December 29, 2025 Motion.

[3] Local Civil Rule 56.1(a) requires the moving party to submit a "short[] and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends

there is no genuine issue to be tried." The nonmoving party, in turn, must submit "a correspondingly numbered paragraph . . . responding to[] each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule," *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.,* 584 F.3d 412, 417–18 (2d Cir. 2009) (same).

"'Pro se litigants are not excused from meeting the requirements of Local Rule 56.1,' and '[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.'" *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021), then quoting *T.Y.*, 584 F.3d at 418); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same). Here, Defendants filed and served their 56.1 Statements on Plaintiff, (*see* Dkt.), and notified Plaintiff of the consequences of not responding to their 56.1 Statements, as required by Local Rule 56.2, (*see* Not. of Local Civ. Rule 56.1 Stmt. (Dkt. No. 191)). Although Plaintiff replied to Defendants' 56.1 Statements, (*see* Pl.'s Counter 56.1; Pl.'s Second Counter 56.1), and submitted a 56.1 Statement in support of his own Motion for Summary Judgment, (*see* Pl.'s 56.1), these filings do not comply with the requirements of Local Civil Rule 56.1. In response to Defendants' 56.1 Statements, Plaintiff simply rehashes the allegations in his Complaint instead of identifying specific disputes of material fact in the record, and he does not cite any admissible evidence. (*See* Pl.'s Counter 56.1; Pl.'s Second Counter 56.1.) Plaintiff's own 56.1 Statement also only rehashes the allegations set forth in his Second Amended Complaint without reference to any record evidence. (*See* Pl.'s 56.1.)

Because Plaintiff has failed to controvert the facts set forth in Defendants' 56.1 Statements, the facts contained therein are deemed admitted. *See Lin v. Amazon.com Servs., LLC*, No. 21-CV-6203, 2024 WL 4266008, at *1 (E.D.N.Y. Sept. 23, 2024) ("Because the [p]laintiff failed to controvert the facts set forth in the [d]efendant's 56.1 Statement, the [c]ourt may deem the facts admitted." (citation omitted)); *Mughal v. Pak. Int'l Airlines Corp.*, No. 14-CV-2505, 2018 WL 1135474, at *1 n.2 (E.D.N.Y. Feb. 28, 2018) (deeming the facts stated in the defendant's 56.1 statement admitted "[b]ecause [the] plaintiff failed to submit a counter statement of disputed facts in accordance with Local Rule 56.1"); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motions, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Veras v. Jacobs*, No. 18-CV-6724, 2022 WL 2133842, at *1 n.1 (S.D.N.Y. June 14, 2022) (collecting cases).

On the morning of April 4, 2022, members of the New York State Police ("NYSP") and local law enforcement executed a search warrant on an apartment in Liberty, New York and arrested Plaintiff inside. (OAG Defs.' 56.1 ¶¶ 1–2.) After his arrest, Plaintiff was transported to the NYSP Liberty Barracks (the "Barracks") for processing. (OAG Defs.' 56.1 ¶¶ 5–8.) Plaintiff testified at his deposition—and Defendants dispute—that after his arrest, the arresting officers "picked [Plaintiff] up physically . . . [and] put [him] inside of the [s]tate [t]roopers' vehicle" for transport to the Barracks, (Cahn Decl. Ex. A ("Pl.'s Tr.") 53:24–54:4 (Dkt. No. 189-1)), but body-worn camera footage, the authenticity of which Plaintiff has not disputed, shows that Plaintiff, escorted by two unidentified officers, walked to the squad car, (OAG Defs.' 56.1 ¶ 6 (citing Cahn Decl. Ex. C ("BWC") 00:00:00–00:00:07).)[4]

Plaintiff arrived at the Barracks at approximately 10:23 a.m., four minutes after leaving the site of his arrest. (*See* BWC 0:00:10 (showing the squad car transporting Plaintiff leaving the scene of his arrest at approximately 10:19 a.m.); 00:00:21 (showing Plaintiff arriving at the Barracks at approximately 10:23 a.m.).) Despite Plaintiff's testimony to the contrary, (*see* Pl.'s Tr. 65:4–11; 67:6–12 (claiming that upon his arrival at the Barracks, he was taken directly downstairs to an isolation room)), upon arrival at the Barracks, Plaintiff was escorted inside, seated on a bench, and had his wrist handcuffed to a wall alongside other detainees, (OAG Defs.' 56.1 ¶¶ 9–10 (citing BWC 00:00:53–00:01:47; 00:01:47–00:02:29). Although Plaintiff testified

[4] Defendants submit a compilation of body-worn camera clips instead of a full video. However, Plaintiff has not challenged the accuracy or completeness of these clips, so the Court will consider them. *See Pal v. Canepari*, No. 20-CV-13, 2023 WL 2712371, *1 n.2 (D. Conn. Mar. 30, 2023) (considering body worn camera clips to which the plaintiff had not objected); *Cole v. N.Y. State Dep't of Corr. & Comm. Supervision*, No. 14-CV-539, 2016 WL 5394752, at *2 n.8 (N.D.N.Y. Aug. 25, 2016) (considering video evidence that had been certified by affidavit and to which the plaintiff did not object).

that Kinderman "punched [him] in [the] stomach" and "struck [him] one time in the face" during the ride to the Barracks, (Pl.'s Tr. 137:18–138:7), the undisputed body-worn camera footage shows that "Plaintiff was not bleeding, visibly injured, or complaining about being in pain when he arrived at the Barracks[,]" (OAG Defs.' 56.1 ¶ 12 (citing BWC 00:00:53–00:02:29). At approximately 10:56 a.m., Plaintiff asked one of the non-party NYSP troopers to adjust his handcuffs because they were hurting. (OAG Defs.' 56.1 ¶ 15 (citing BWC 00:03:02–00:03:07).) The trooper explained that Plaintiff would be unhandcuffed shortly but that in the meantime, he could be handcuffed to the bottom of the bench instead of the wall, to which Plaintiff agreed. (*Id.* ¶¶ 16–17 (citing BWC 00:03:17–00:04:13).)

Plaintiff subsequently left the Barracks to be processed on an unrelated charge, (*id.* ¶¶ 18–19 (citing BWC 00:04:29–00:04:42, 00:46:44–00:47:19; 00:04:38–00:05:25), but returned approximately 50 minutes later and was re-handcuffed to the wall alongside other detainees, (*id.* ¶ 20 (citing BWC 00:05:25–00:07:10). The NYSP trooper who handcuffed Plaintiff back to the wall asked Plaintiff if his handcuffs were too tight, to which Plaintiff responded "[t]hat's fine." (*Id.* ¶ 21 (citing BWC 00:06:59–00:07:05).) Approximately two minutes later, a different NYSP trooper informed Plaintiff that he was going to be moved to an interview room on a different floor. (*Id.* ¶ 22 (citing BWC 00:07:30–00:07:49).) Plaintiff was then uncuffed from the wall and walked downstairs. (*Id.* ¶ 23 (citing BWC 00:07:49–00:09:41).) Body-worn camera footage confirms that Plaintiff "was not in handcuffs, not bleeding or visibly injured" and walked downstairs on his own volition. (*Id.* ¶ 24 (citing BWC 00:07:49–00:09:41).) Upon entering the interview room, Plaintiff was alone and not in handcuffs. (*Id.* ¶ 25 (citing BWC 00:09:30–00:09:41).) For the next 13 minutes, a NYSP trooper stood outside the closed interview room

door, with Plaintiff inside. (*Id.* ¶ 26 (citing BWC 00:09:42–00:22:41).) No one entered or exited the interview room during this time. (*Id.*)

At 12:03 p.m., Plaintiff began knocking on the inside of the door to the interview room. (*Id.* ¶ 27 (citing BWC 00:22:30–00:22:43).) When the NYSP trooper asked Plaintiff what was going on, Plaintiff began yelling, and the trooper opened the door, finding Plaintiff still alone in the room, unhandcuffed. (*Id.* ¶ 29 (citing BWC 00:22:55–00:23:00).) A non-party NYSP senior investigator asked Plaintiff what he needed, and Plaintiff inquired as to why he was sitting in the locked interview room alone. (*Id.* ¶¶ 29–30 (citing BWC 00:22:55–00:23:00; 00:23:00–00:23:24).) The investigator explained that Plaintiff was being charged in connection with the drugs recovered during the execution of the search warrant, (*id.* ¶ 30), and Plaintiff asked to speak with his attorney, (*id.* ¶ 31 (citing BWC 00:23:25–00:26:17).) The investigator told Plaintiff that he would get Plaintiff to a phone to call his attorney as soon as possible. (*Id.*) Plaintiff asked if he "was entitled to get something to eat[,]" (*id.* ¶ 32 (citing BWC 00:26:18–00:26:21)), to which the investigator responded that he did not have any food for Plaintiff, but he would bring him water, (*id.* ¶ 33 (citing BWC 00:26:22–00:26:28).) The NYSP trooper then closed the door to the interview room, leaving Plaintiff inside by himself. (*Id.* ¶ 34 (citing BWC 00:26:26–00:26:32).) A few moments later, another non-party NYSP trooper opened the door to give Plaintiff a cup of water and subsequently closed the door to the interview room, leaving Plaintiff inside by himself once again. (*Id.* ¶¶ 38–39 (citing BWC 00:27:14–00:27:23; 00:28:10–00:28:14).) Although Plaintiff claims that he was left alone in the interview room "[f]or about six to seven hours," (Pl.'s Tr. 68:4), or "between four to six hours[,]" (*id.* 153:20), without water (*id.* 68:7–69:4), the undisputed body-worn camera footage shows that Plaintiff was held in the

interview room for approximately 30 minutes and was provided water at approximately 12:08 p.m., (OAG Def.'s 56.1 ¶¶ 32–33, 38, 44).

At approximately 12:20 p.m., Plaintiff knocked on the door and asked to use the bathroom. (*Id.* ¶ 41 (citing BWC 00:38:43–00:39:06).) An NYSP trooper escorted Plaintiff to the bathroom and returned him to the bench where he had previously been sitting, and he was once again handcuffed to the wall. (*Id.* ¶46 (citing BWC 00:42:37–00:43:03).) Around 12:43 p.m., Plaintiff complained that his wrists hurt and were starting to bleed and stated that he needed medical attention. (*Id.* ¶ 47 (citing BWC 00:48:11–00:48:28).) Another NYSP trooper then uncuffed Plaintiff's wrists and handcuffed his ankles to the bench. (*Id.* ¶ 48 (citing BWC 00:48:29–00:48:45).) As the trooper adjusted Plaintiff's handcuffs, Plaintiff again requested medical attention, and a different trooper asked Plaintiff if he wanted "EMS" or "medical attention," even though Plaintiff was not bleeding or visibly injured. (*Id.* ¶¶ 48–49 (citing BWC 00:48:29–00:48:45; 00:48:45–00:50:05).) Plaintiff instead responded that he just wanted to go before a judge and be arraigned. (*Id.* ¶ 50 (citing BWC 00:49:38–00:49:50).) Approximately 30 minutes later, Plaintiff asked to use the bathroom, and a NYSP trooper uncuffed him from the bench and escorted him to the bathroom. (*Id.* ¶ 51 (citing BWC 00:50:21–00:55:06).) At this time, Plaintiff "was not bleeding, visibly injured, or complaining about being in pain . . . ." (*Id.* ¶ 52 (citing BWC 0:50:24–00:51:04).)

At approximately 2:17 p.m., DePuy walked into the upstairs area of the Barracks where Plaintiff was handcuffed to the bench along with other detainees. (*Id.* ¶ 53 (citing BWC 00:55:13–00:55:19).) Plaintiff asked DePuy what he and the other detainees were being charged with, and she responded that Plaintiff would get a copy of the charges being brought against him and that she was there to fingerprint Plaintiff and the other detainees so that they could be

arraigned. (*Id.* ¶ 54 (citing BWC 00:55:18–00:56:36).) Plaintiff then asked Depuy if she was the lead investigator and other questions about the execution of the search warrant, to which she responded that she did not know because she had just arrived at the Barracks at 2:00 p.m. (*Id.* ¶ 56 (citing BWC 00:56:37–00:57:43).) Around 2:19 p.m., DePuy left the area of the Barracks where Plaintiff was being held. (*Id.* ¶ 58 (citing BWC 00:57:44–00:57:49.) At no point during this interaction did she touch Plaintiff. (*Id.* ¶ 59 (citing BWC 00:55:13–00:57:49).)

At approximately 2:28 p.m., Plaintiff asked for the non-party NYSP troopers present to get the detainees something to eat. (*Id.* ¶ 61 (citing BWC 00:58:27–00:59:00).) The troopers responded that they could not give the detainees food but could get them water. (*Id.*) At approximately 2:29 p.m. and 2:39 p.m., the non-party troopers gave cups of water to the detainees who asked for them. (*Id.* ¶ 62 (citing BWC 00:59:52–01:00:21).) Ten minutes later, DePuy returned to the room where Plaintiff was being held, but she did not speak to Plaintiff or physically touch him. (*Id.* ¶¶ 63–66 (citing BWC 01:00:31–01:01:57).) At approximately 2:42 p.m., one of the NYSP troopers began processing Plaintiff for the charges he was facing in connection with the search warrant executed that morning. (*Id.* ¶ 68 (citing BWC 01:01:57–01:02:36).) While being photographed and fingerprinted by the non-party troopers, Plaintiff was not bleeding or visibly injured and did not complain of being in pain. (*Id.* ¶ 69 (citing BWC 01:01:57–01:07:29).)

Shortly thereafter, Plaintiff left the Barracks to be arraigned. (*Id.* ¶ 71 (citing BWC 01:12:45–01:13:31).) While being escorted to his arraignment, Plaintiff complained about his leg restraints being too tight and asked if they could be put over his pants. (*Id.* ¶ 72 (citing BWC 01:13:03–01:13:12).) A non-party NYSP trooper responded that Plaintiff did not have to walk that much further, and Plaintiff continued walking. (*Id.* ¶ 73 (citing BWC 01:13:03–01:13:12).)

Approximately 30 seconds later, however, Plaintiff claimed that he was in pain and would not move any further unless his leg restraints were loosened, (*id.* ¶ 74 (citing BWC 01:13:32–01:13:47)), and the non-party troopers loosened his leg restraints, (*id.* ¶ 75 (citing BWC 01:13:41–01:14:36)). Plaintiff was then placed in an NYSP vehicle and transported to court for his arraignment. (*Id.* ¶¶ 76, 78–79 (citing BWC 01:14:37–01:15:12; 01:16:50–01:17:55; 01:19:33–01:21:06).) Plaintiff was not bleeding or visibly injured at this time. (*Id.* ¶ 77 (citing BWC 00:00:53–01:15:1).)

After his arraignment, Plaintiff was remanded to the Sullivan County Jail (the "Jail"), and two non-party NYSP troopers transported him there. (*Id.* ¶¶ 80–82 (citing BWC 01:21:07–01:22:45; 01:21:07–01:40:13; 02:07:01–02:08:46).) He was not bleeding or visibly injured upon arrival. (*Id.* ¶ 83 (citing BWC 01:21:07–02:08:46).) As part of the intake process, Plaintiff underwent a medical screening in which he "denied he required immediate medical attention" and denied that "he had ever had a head injury." (*Id.* ¶¶ 85–86.) Non-party nurse Daniel Whitmore ("Whitmore"), who performed the screening, "noted that Plaintiff's extremities, neurological signs, and skin appeared normal." (*Id.* ¶ 87.) Plaintiff also completed and signed "an initial risk assessment" that "showed that [he] did not have any visible injuries or medical conditions requiring ongoing medical treatment" as part of the Jail's intake process. (*Id.* ¶¶ 88–89.)

B. Procedural Background

Plaintiff initiated this Action on May 25, 2022. (*See* Compl. (Dkt. No. 2).) On June 23, 2022, the Court dismissed sua sponte Defendants Superior Court Justice James R. Farrell and prosecutors Meagan Galligan and Michael Puma on the grounds of judicial and prosecutorial immunity, respectively. (*See generally* Order of Dismissal (Dkt. No. 6).) Despite the Court

ordering service on Depuy, Fox, and SanFeliz, (*see* Order of Service (Dkt. No. 10)), service remained unexecuted through 2022, (*see* Process Receipt and Return (Dkt. No. 16); Process Receipt and Return (Dkt. No. 17); Process Receipt and Return (Dkt. No. 18)).

On March 31, 2023, the Court issued a *Valentin* order. (*See* Order (Dkt. No. 24).) On May 30, 2023, the New York State Office of the Attorney General (the "OAG") responded to the *Valentin* order and raised concerns that it believed warranted dismissal. (*See* Letter from S. Cynthia Luo, Esq. to Court (May 30, 2023) (Dkt. No. 25).) On January 9, 2024, the Court dismissed Plaintiff's claim for false arrest because Plaintiff had been convicted of possession of a controlled substance in connection with his arrest. (*See* Order of Dismissal 2–4 (Dkt. No. 31).) On January 17, 2024, the Court directed the U.S. Marshals to serve Depuy, SanFeliz, and Fox. (*See* Order of Service (Dkt. No. 33).) On March 19, 2024, SanFeliz requested leave to file a motion to dismiss or an order requiring Plaintiff to file a more definite statement of claim. (*See* Letter from Michael Sussman, Esq. to Court (Mar. 19, 2024) (Dkt. No. 41).) On March 21, 2024, Depuy and Fox waived service and joined SanFeliz's requests. (*See* Letter from S. Cynthia Luo, Esq. to Court (Mar. 21, 2024) (Dkt. No. 45).)

On April 10, 2024, the Court ordered Plaintiff to file an amended complaint, (*see* Order (Dkt. No. 52)), which he filed on May 7, 2024, (*see* First Am. Compl. (Dkt. No. 57)). On June 4, 2024, SanFeliz filed her Answer to Plaintiff's Amended Complaint, (*see* Answer (Dkt. No. 63)), and Depuy and Fox requested leave to file a motion to dismiss, (*see* Letter from S. Cynthia Luo, Esq. to Court (June 4, 2024) (Dkt. No. 62)), which the Court granted on June 5, 2025, (*see* Order (Dkt. No. 64)). Depuy and Fox filed their Motion To Dismiss on July 11, 2024. (*See* Mot. To Dismiss (Dkt. No. 66); Mem. of Law in Supp. of Mot. To Dismiss (Dkt. No. 67).) Plaintiff filed his Opposition on July 29, 2024. (*See* Pl.'s Opp'n (Dkt. No. 68).) On September 10, 2024,

Depuy and Fox filed their Reply. (*See* Reply Mem. of Law (Dkt. No. 74).) On March 21, 2025, the Court dismissed Plaintiff's Amended Complaint but granted him leave to file a second amended complaint. *Herbert v. SanFeliz*, No. 22-CV-4299, 2025 WL 887718, at *6 (S.D.N.Y. Mar. 21, 2025).

On April 20, 2025, Plaintiff filed his Second Amended Complaint, which added Kinderman as a defendant. (*See* Second Am. Compl. ("SAC") (Dkt. No. 102).) On May 13, 2025, Depuy, Fox, and SanFeliz filed their Answers. (*See* Answer (Dkt. No. 104); Answer (Dkt. No. 105).) On July 18, 2025, the Court ordered the U.S. Marshals to serve Kinderman, (*see* Order of Service (Dkt. No. 114)), who eventually waived service, (*see* Waiver of Service (Dkt. No. 131)). On June 26, 2025, the Court referred this Action to the Honorable Judith C. McCarthy for non-dispositive pre-trial proceedings. (*See* Referral Order (Dkt. No. 109).) On November 3, 2025, Kinderman filed his Answer to Plaintiff's Second Amended Complaint. (*See* Answer (Dkt. No. 141).)

On December 29, 2025, Plaintiff filed his first Motion for Summary Judgment sua sponte. (*See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") (Dkt. No. 162).) On January 21, 2026, Defendants requested leave to file a motion for summary judgment, (*see* Letter from Gabriel Cahn, Esq. to Court (Jan. 21, 2026) (Dkt. No. 165)), which the Court granted, (*see* Order (Dkt. No. 166)). On January 30, 2026, Plaintiff filed his 56.1 Statement. (*See* Pl.'s 56.1.) On February 5, 2026, the Parties filed a joint letter confirming the completion of discovery. (*See* Letter from Gabriel Cahn, Esq. to Court (Feb. 5, 2026) (Dkt. No. 174).)

On February 23, 2026, SanFeliz filed her Motion for Summary Judgment, (*see* Mot. for Summ. J. ("SanFeliz's MSJ") (Dkt. No. 182); Mem. of Law in Supp. of Mot. for Summ. J. ("SanFeliz's Mem.") (Dkt. No. 183); SanFeliz's 56.1), and her Opposition to Plaintiff's Motion

for Summary Judgment, (*see* SanFeliz's Counter 56.1; Mem. of Law in Opp'n ("SanFeliz's Opp'n") (Dkt. No. 186)). On February 24, 2026, Depuy, Fox, and Kinderman filed their Motion for Summary Judgment. (*See* Mot. for Summ. J. ("OAG Defs.' MSJ") (Dkt. No. 187); Mem. of Law in Supp. of Mot. for Summ. J. ("OAG Defs.' Mem.") (Dkt. No. 188); Decl. of Gabriel Cahn, Esq. Supp. Mot. for Summ. J. ("Cahn Decl.") (Dkt. No. 189); OAG Defs.' 56.1.) On March 24, 2026 and April 3, 2026, Plaintiff submitted his Opposition to Defendants' Motions for Summary Judgment. (*See* Pl.'s Counter-56.1; Pl.'s Second Counter-56.1; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n Mem.") (Dkt. No. 202); Reply Decl. of Jeremiah F. Herbert in Opp'n (Dkt. No. 203).) On April 15, 2026, Depuy, Fox, and Kinderman submitted a reply in support of their Motion for Summary Judgment. (*See* Reply. Mem. of Law in Supp. of Mot. for Summ. J. ("OAG Defs.' Reply") (Dkt. No. 209).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion," the nonmovant must "create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr*., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).

B. Analysis

Plaintiff claims that during his arrest and detention at the Barracks, Defendants subjected him to excessive force and an unlawful strip search.[5] (SAC 6–9; Pl.'s Mot. 3–12.) He also contends that Defendants were deliberately indifferent to his medical needs and held him without access to food or water in violation of his constitutional rights. (*Id.*)

1. Excessive Force

Although excessive force claims during the course of an arrest are analyzed under the Fourth Amendment, *see, e.g.*, *Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *13 (S.D.N.Y. Mar. 25, 2020) ("Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment and its reasonableness standard." (quotation

[5] In his Motion for Summary Judgment, Plaintiff asserts, for the first time, claims of failure to protect and retaliation. (Pl.'s Mot. 5.) However, "[e]ven given the considerable leeway in pleadings afforded to pro se litigants, Plaintiff here cannot raise a new claim for the first time . . . [at] summary judgment." *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman LLP*, 491 F. Supp. 2d 386, 402 (S.D.N.Y. 2007) (italics omitted); *see also Thomas v. Jacobs*, No. 19-CV-6554, 2025 WL 662899, at *21 n.27 (S.D.N.Y. Feb. 28, 2025) ("A plaintiff, even when proceeding pro se, may not raise new allegations for the first time in opposition to summary judgment." (quotation marks omitted) (quoting *Pierre v. City of New York*, 531 F. Supp. 3d 620, 628 n.5 (E.D.N.Y. 2021)); *Oyewo v. Lahood*, 515 F. App'x 10, 11 (2d Cir. 2013) (summary order) (finding that the pro se plaintiff "abandoned her . . . claim by raising it for the first time in opposition to [the defendant]'s motion for summary judgment"); *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (summary order) ("The district court did not err in disregarding allegations [the pro se plaintiff] raised for the first time in response to [the defendant]'s summary judgment motion."). Accordingly, the Court declines to address these late-breaking claims. *See Dawkins v. Fed. Bureau of Investigation*, No. 23-CV-849, 2025 WL 605959, at *6 (E.D.N.Y. Feb. 24, 2025) (declining to consider claims asserted for the first time by the pro se plaintiff at the summary judgment stage); *Pierre*, 531 F. Supp. at 628 n.5 (same).

marks, alteration, and citation omitted)), and excessive force claims brought by pre-trial detainees "are analyzed under the Due Process Clause of the Fourteenth Amendment," *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)), courts analyzing both types of excessive force claims "ask 'whether the officers' actions were "objectively reasonable"' in light of the facts and circumstances confronting them[,]'" *Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Kinglsey v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (holding that to prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely used against him was objectively unreasonable"); *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) ("When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting [the officers], without regard to [the officers'] underlying intent or motivation.'" (alteration in original) (quoting *Graham*, 490 U.S. at 397 (1989)); *Portillo v. Webb*, No. 16-CV-4731, 2022 WL 2337380, at *15 (S.D.N.Y. June 29, 2022) ("[T]he 'objective reasonableness' standard employed in the Fourth Amendment context mirrors the framework used to evaluate excessive force claims brought by pretrial detainees under the Fourteenth Amendment." (citing *Kingsley*, 576 U.S. at 397)).

"Although credibility determinations are not appropriate at this stage of litigation, in excessive force cases, summary judgment is proper 'where undisputed medical records *directly and irrefutably* contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening.'" *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 641 (S.D.N.Y. 2020) (emphasis in original) (quoting *Henry v. Officer Pierce*, No. 11-

CV-845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017)). "As the Second Circuit has explained, a district court does not err where there is 'nothing in the record to support [the] plaintiff's allegations other than [the] plaintiff's own contradictory and incomplete testimony' and despite drawing all reasonable inferences in [the] plaintiff's favor, 'no reasonable person could believe [the plaintiff's] testimony.'" *Smith v. City of New York*, No. 18-CV-5079, 2021 WL 4267525, at *6 (S.D.N.Y. Sept. 20, 2021) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (citation omitted)). This is one such case. Although Plaintiff claims he was "slammed head first into [a] wall and [the] floor[,]" (Pl.'s Mot. 3), "str[uck] . . . in the back," "dragged [and] kicked" while wearing handcuffs, (*id.* at 8), "held inside a room . . . without food or water, [while] [b]leeding from the tightness of [his] handcuffs, [and] [d]enied . . . medical services," (*id.* at 3), which resulted in "serious physical injuries[,]" including a "broken nose, broken jaw[]bone, [u]pper and lower back pain[], [and] [v]ision impairment," (*id.* at 5), Plaintiff's undisputed medical records from the Jail directly and irrefutably contradict his account. During his intake exam, none of his alleged injuries were documented by Whitmore, and his condition was inconsistent with the "savage[] and merciless[] beat[ings]" Plaintiff claims to have endured. (*Id.* at 4; *see also* Cahn Decl. Ex. 6 ("Pl.'s Intake Assessment") 7 (Dkt. No. 189-6) (indicating that Plaintiff's "physical appearance" did not "suggest" he had experienced "assault" and noting that Plaintiff "denie[d]" "ever ha[ving] a head injury[,]" or "be[ing] the victim of a violent crime[]"); *id.* at 10 (describing Plaintiff's "[e]xtremities" as "[n]ormal" with "[f]ull range of motion" and noting his "[s]kin" had "[n]o open lesions); *id.* at 21 (indicating that Plaintiff did not have "any visible injuries[]" or "medical conditions requiring ongoing or immediate treatment[]" and that his "appearance and behavior [were] normal[]").) In fact, during this intake assessment, Plaintiff denied needing immediate medical attention, (*id.* at 4),

and certified the accuracy of the information contained in these records, (*id.* at 22). Undisputed video evidence from the Barracks also shows Plaintiff declining medical attention on several occasions. (OAG Defs.' 56.1 ¶¶ 48–50.) And, although Plaintiff testified that he sought medical attention for his injuries at an urgent care facility on two occasions, (Pl.'s Tr. 179:8–182:7), records of these visits do not exist, (Sussman Decl. Ex. 7 (Dkt. No. 182-9)).

Summary judgment is appropriate where, as here, medical records "directly contradict the version of facts [the] plaintiff g[ives] in his complaint as well as in his deposition" and "the record is devoid of evidence of any kind supporting [the plaintiff's] description of his injuries—other than his own claims." *Davis v. Klein*, No. 11-CV-4868, 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013); *see also Smith*, 2021 WL 4267525, at *6–7 (granting summary judgment where the plaintiff's medical records directly contradicted his version of events); *Jenkins v. Town of Greenburgh*, No. 13-CV-8845, 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) (granting summary judgment on the plaintiff's excessive force claim because his medical records made no mention of injury alleged and the only evidence supporting the plaintiff's claim was his own deposition testimony); *Henry v. Brown*, 406 F. Supp. 3d 211, 215 (E.D.N.Y. 2016) (granting summary judgment on the plaintiff's excessive force claim which were supported by "nothing more than his own bare assertions" and contradicted by medical records); *Bove v. New York City*, No. 98-CV-8800, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (granting summary judgment for the defendants on an excessive force claim where the plaintiff's "allegations [we]re completely contradicted by the hospital's records and, more importantly, [we]re unsupported by any evidence other than the plaintiff's assertions"). Because Plaintiff's testimony is "flatly contradicted by medical documents, his word alone is not enough to create a genuine dispute of material fact." *Rolkiewicz*, 442 F. Supp. 3d at 643 (citing *Campbell v.*

*Hanson*, No. 17-CV-1024, 2019 WL 2717691, at *5 (S.D.N.Y. June 28, 2019)). "Given the lack of evidence supporting [Plaintiff's] claims and the contradictions between his testimony and his medical records, no reasonable jury could credit Plaintiff's version of the facts." *Smith*, 2021 WL 4267525, at *7 (collecting cases). Having had the full benefit of discovery, "Plaintiff offers no reasonable basis for disbelieving his medical records[.]" *Azziz Arif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998). Therefore, based on the record before it, the Court finds that there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's excessive force claim. Accordingly, the Court grants summary judgment for Defendants on this claim.

2. Unlawful Search

Plaintiff also claims that Defendants invaded his bodily privacy by subjecting him to an unlawful strip search during which they sexually harassed, assaulted, and/or abused him. (SAC 9–10; Pl.'s Tr. 70:18–73:4, 158:21–165:5.) In particular, Plaintiff alleges that while at the "Troop F Station," he was "the subject of sexual harassment, sexual misconduct, and sexual [a]ssault acts . . . by San [ ] [F]eliz [and] Kinderman." (SAC 9.) Apparently at around the same time, Plaintiff alleges, Defendants Fox, Depuy, and San [F]eliz conducted an "improper strip search." (*Id.*) Plaintiff claims that Defendants committed these acts after Defendants allegedly moved him to "an undisclosed area inside Troop F Station" and that this happened around 2:30 p.m. on April 4, 2022. (*Id.* 9–10.) During his deposition, Plaintiff elaborated on these allegations, stating that the strip search lasted "about fifteen to twenty minutes," (Pl.'s Tr. 73:2–3), but that the strip search was actually done between 3:15 and about 3:30, (Pl.'s Tr. 159: 5–7), after Plaintiff was taken from the "isolation room" to "a whole different area of the precinct," (Pl.'s Tr. 159:13–17).

The Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion," *Katz v. United States*, 389 U.S. 347, 350 (1967), and its protections extend to prisoners and pretrial detainees, *Bell v. Wolfish*, 441 U.S. 520, 545, 558–59 (1979). "Regardless of who performs the search, a visual body cavity search . . . is invasive: 'A strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy.'" *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (quoting *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 344–45 (2012) (Breyer, J., dissenting)). Thus, the Fourth Amendment requires "all searches conducted [in custody], including strip searches, to be reasonable." *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (citing *Hodges v. Stanley*, 712 F.2d 34, 35 (2d Cir. 1983) (per curiam)). "[A] misdemeanor arrestee may not be strip searched in the absence of an individualized reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Sims v. Farrelly*, No. 10-CV-4765, 2013 WL 3972460, at *7 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted) (quoting *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008)). "The same rule applies to felony narcotics arrestees." *Id.* at *8 (collecting cases).

Similar to his claims of excessive force, the only record evidence supporting the occurrence of the strip search and attendant conduct come from Plaintiff's own deposition. (*See* Pl.'s Tr. 70:23–73:12, 159:2–165:5 (describing the alleged strip search and attendant behavior).) "Although Plaintiff's allegations are quite serious, he must, at the summary judgment stage, rely on more than his own conclusory allegations; to avoid summary judgment, Plaintiff must offer 'some hard evidence' of his version of the facts." *Odom v. Kerns*, No. 99-CV-10668, 2008 WL

2463890, at *11 (S.D.N.Y. June 18, 2008) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). Here, there is none. In fact, Plaintiff's verified medical records from his intake exam at the Jail thoroughly contradict his version of events. (*See* Pl.'s Intake Assessment 7 (indicating that Plaintiff's "physical appearance" did not "suggest" he had experienced "assault" and noting that Plaintiff "denie[d]" "be[ing] the victim of a sexual crime[]").) Nor has Plaintiff contested the veracity of these records at the summary judgment stage. (*See generally* Pl.'s Mot.) Furthermore, Plaintiff's claims are inconsistent with the extensive body-worn camera footage submitted by Defendants, some of which comes from a fixed camera in the detainee holding room, which shows that Plaintiff was held in the same room as the other detainees and had limited contact with Defendants during the time he claimed to have been strip searched. (*See* BWC 00:55:22–1:12:07 (showing Plaintiff sitting in the detainee room and being processed from approximately 2:17 p.m. to 2:52 p.m.).)

Based on the lack of affirmative evidence supporting Plaintiff's version of events and record evidence that conclusively disproves Plaintiff's contradictory claims, Defendants are entitled to summary judgment on Plaintiff's unlawful search claim. *See Vlahopolous v. Roslyn Union Free Sch. Dist.*, No. 21-CV-63, 2024 WL 1242087, at *8 (E.D.N.Y. Mar. 22, 2024) (granting summary judgment when "the undisputed facts indicate that no strip search of [the] [p]laintiff was ever conducted"); *Valade v. City of New York*, 949 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) (granting summary judgment on the plaintiff's claim of unlawful strip search when she "failed to produce any evidence that she was strip searched at all, let alone unlawfully so"); *Caidor v. Harrington*, No. 05-CV-297, 2009 WL 174958, at *4 (N.D.N.Y. Jan. 26, 2009) (granting summary judgment on the plaintiff's unlawful strip search claim where "the [c]ourt c[ould] find no admissible record evidence that any such strip search even occurred").

3. Deliberate Medical Indifference & Unconstitutional Conditions of Confinement

Lastly, Plaintiff claims Defendants were deliberately indifferent to his serious medical needs by denying him medical care and subjected him to unconstitutional conditions of confinement by holding him without food or water for over four hours. (Pl.'s Tr. 68:4–6, 153:20.)

The Fourteenth Amendment's Due Process Clause protects pre-trial detainees from both deliberate indifference to their medical needs and unsafe conditions of confinement. *See Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019) (noting that the same Fourteenth Amendment standard applies to claims of deliberate indifference to medical needs and unconstitutional conditions of confinement); *Darnell v. Pineiro*, 849 F.3d 17, 33 n.9 (2d Cir. 2017) (noting that the standard for unconstitutional claims of confinement also applies to claims of deliberate indifference to medical needs because "deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment"). "To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must establish two elements: first, that the deprivation of medical care was sufficiently serious, and second, that the defendant acted or failed to act with a sufficiently culpable state of mind." *Dumel v. Westchester County*, 656 F. Supp. 3d 454, 463–64 (S.D.N.Y. 2023) (alterations adopted, quotation marks and citations omitted). Similarly, to establish a claim for unconstitutional conditions of confinement, "[t]he objective prong requires a 'showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[]' [and] [t]he subjective prong requires a 'showing that the officer acted with at least deliberate indifference to the challenged conditions,' 'acted intentionally,' or 'recklessly failed to act with reasonable care.'" *Vail v. City of New York*, No. 18-CV-11822, 2020 WL 3548074, at *3 (S.D.N.Y. May 15, 2020) (quoting *Darnell*, 849 F.3d at 29, 35)).

Here, the Court need not delve into this analysis because the record evidence directly contradicts Plaintiff's claims. Although Plaintiff claims to have been held without food or water for six to seven hours, timestamps on the undisputed body-worn camera footage, of which Plaintiff does not contest the authenticity, make clear that Plaintiff was held at the Barracks for less than six hours, (*see* BWC 00:00:21 (showing Plaintiff arriving at the Barracks at approximately 10:23 a.m.); *id.* at 01:21:50 (showing Plaintiff departing the Barracks at approximately 3:40 p.m.)), and video footage shows Plaintiff being offered water on several occasions, (OAG Defs.' 56.1 ¶¶ 13–14, 62), and accepting water at approximately 12:08 p.m., (*id.* ¶¶ 32–33). Although Plaintiff was not given food while detained at the Barracks, this relatively short period of time is insufficient to support a deliberate indifference to medical needs or conditions of confinement claim. *See Lee v. Carter*, No. 21-CV-8629, 2022 WL 3441654, at *8 (S.D.N.Y. July 28, 2022) ("[C]ourts consistently hold that being without food and water for seven or eight hours does not constitute a due process violation." (collecting cases)), *report and recommendation adopted*, 2022 WL 21770731 (S.D.N.Y. Aug. 12, 2022); *Mejia v. Carter*, No. 21-CV-9049, 2022 WL 17653826, at *5 (S.D.N.Y. Nov. 2, 2022) (explaining that "[t]he deprivation of food and water for a seven to eight-hour period . . . falls short of a constitutional violation"); *Cox v. City of New York*, No. 13-CV-163, 2014 WL 3696003, at *11 (E.D.N.Y. July 23, 2014) (finding the plaintiff's allegations of "[n]ot receiving food as a pre-trial detainee for 4.5 hours . . . or even 12 hours overnight . . .," did not amount to unconstitutional conditions of confinement because "[t]his amount of time is not excessive in the context of the initial bustle of processing and arraigning an arrestee" (quotation marks and citation omitted)).

Additionally, body-worn camera footage shows that Plaintiff was offered and refused medical care several times, (OAG Defs.' 56.1 ¶¶ 15–21, 47–50, 71–75), and Plaintiff's medical

records from his intake assessment at the Jail directly contradict his allegations of serious injury, (*contrast* Pl.'s Mot. 5, (describing the injuries he allegedly suffered) *with* Pl.'s Intake Assessment 10, 21 (describing Plaintiff's "[e]xtremities" as "[n]ormal" with "[f]ull range of motion[,]" noting his "[s]kin" had "[n]o open lesions[,]" and indicating that Plaintiff did not have "any visible injuries[]" or "medical conditions requiring ongoing or immediate treatment[]" and that his "appearance and behavior [were] normal[]").) Accordingly, summary judgment must be granted for Defendants because there is no evidence to support Plaintiff's version of events. *See Berman v. Williams*, No. 17-CV-2757, 2019 WL 4450810, at *8 (S.D.N.Y. Sept. 17, 2019) (granting summary judgment for the defendants where "medical reports counter the plaintiff's conclusory allegations that the defendants failed to provide him with medical care such that no reasonable jury could find in the plaintiff's favor"); *Alston v. Parfumi*, No. 09-CV-1978, 2016 WL 447423, at *2 (D. Conn. Feb. 4, 2016) (denying reconsideration of a grant of summary judgment for the defendants in which the Court found that video evidence in the record directly contradicted the plaintiff's claims of unconstitutional conditions of confinement).

## III. Conclusion

For the reasons set forth above, Defendants' Motions for Summary Judgment are granted, and Plaintiff's Motion for Summary Judgment is denied.[6] The Clerk of the Court is respectfully

---

[6] Although Defendants ask the Court to count this case as a "strike" against Plaintiff under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g) ("Section 1915(g)") because his claims are frivolous and made in bad faith, (OAG Defs.' Mem. 21–22), such a determination can only be made by a district court considering future in forma pauperis actions brought by Plaintiff. *See Griffin v. Carnes*, 72 F.4th 16, 19–21 (2d Cir. 2023) (affirming the lower court's dismissal of the plaintiff's complaint on the grounds that three prior actions brought by the plaintiff constituted strikes under Section 1915(g)); *Taylor v. OBCC*, No. 24-CV-4011, 2024 WL 2867464, at *1–2 (S.D.N.Y. May 30, 2024) (denying the plaintiff's request to proceed in forma pauperis and dismissing his complaint as barred by Section 1915(g)'s three-strikes rule); *Fate v. New York*, No. 19-CV-4107, 2021 WL 1177966, at *7 (S.D.N.Y. Mar. 6, 2021) (same).

directed to terminate the pending Motions at Dkt. Nos. 161, 162, 173, 182, 187, 200, and 201, mail a copy of this Order & Opinion to Plaintiff, and close the case.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge